STERN v. ROSENTHAL et al.

(Supreme Court, Appellate Term. April 8, 1911.)

1. INSURANCE (§ 2*)—REGULATION—"BUSINESS OF INSURANCE."

Insurance Law (Consol. Laws 1909, c. 28) § 54, prohibits any person from engaging "in the business of insurance" within the state except on compliance with the requirements of the insurance law. *Held*, that where defendants employed plaintiff to manufacture trousers out of defendants' material, and, in consideration of a deduction of 1 per cent. from the amount to become due, agreed to pay for plaintiff's services if the goods should be damaged by fire, defendants did not, by such provision, assume

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a risk, and hence that part of the contract did not constitute doing an insurance business by defendants within such section.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1½; Dec. Dig. § 2.*

For other definitions, see Words and Phrases, vol. 1, pp. 915–926; vol. 8, pp. 7593, 7594.]

2. JUDGMENT (§ 715*)—RES JUDICATA—DEFENSE—IDENTITY OF ISSUES.
A judgment roll, including the pleadings, in an action between the same parties for work, labor, and services, did not establish a plea of res judicata in an action under an agreement to pay for labor on materials furnished by defendant, but burnt before the work was completed.

[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 715.*]

Appeal from City Court of New York, Trial Term.

Action by Adolf Stern against Samuel Rosenthal and others. From a judgment of the New York City Court in favor of plaintiff, and from an order denying defendants' motion for new trial, they appeal. Affirmed.

See, also, 56 Misc. Rep. 643, 107 N. Y. Supp. 772.

Argued before SEABURY, LEHMAN, and BIJUR, JJ.

Freyer, Hyman & Jarmulowsky (Adolph Freyer, of counsel), for appellants.

Nathan Waxman, for respondent.

SEABURY, J. The plaintiff claims that he entered into an oral agreement with the defendants under which the defendants hired the plaintiff for an indefinite term to make up into trousers material supplied by defendants, and that, in consideration of the payment by the plaintiff of $1 to be deducted by defendants from every $100 worth of work done upon defendants' material by plaintiff, the defendants agreed to pay plaintiff the value of the labor put upon said material if the same should be damaged or destroyed by fire. The plaintiff also claims that, pursuant to said agreement, he received materials from the defendants and expended labor upon them, and that the defendants deducted $1 from each $100 to which plaintiff was entitled for labor performed by the plaintiff upon defendants' material. The plaintiff also claimed that he performed labor upon such materials of the reasonable value of $575, and that said materials were destroyed by fire without any fault of the plaintiff, and that there is now due him from the defendants $575, less $5.75 to be deducted under said agreement. The answer is a general denial and, as separate defenses, alleges payment, the statute of frauds and res adjudicata. The court submitted to the jury only the question as to whether such a contract as the plaintiff claimed was made and the amount of work which the plaintiff did under it.

Upon this appeal the appellants urge two grounds for the reversal of the judgment: First. That the contract sued upon is a contract of insurance, and as such is invalid. Second. That the former action is a bar to plaintiff's right to recover in this action. We shall consider both of these contentions in their order.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1] First. We think that the contract sued upon was a contract of employment, rather than a contract of insurance. The claim is made that the contract sued upon is one of insurance, and that such a contract is invalid under sections 54, 58, and 59 of the insurance law (Consol. Laws 1909, c. 28). Sections 58 and 59 of the insurance law relate exclusively to life insurance, and can have no possible application to this case. While section 54 of the insurance law in terms prohibits any person from engaging in the "business of insurance" in this state except upon compliance with the requirements of the insurance law, which the defendants have not complied with, we think that said provision has no application to a contract such as is now before us for consideration.

The "insurance business," contemplated by section 54 of the insurance law, cannot be said to cover such a case as this. Here the defendants employed the plaintiff to work for them, and one of the terms of the contract of employment permitted the defendants to deduct a portion of the plaintiff's wages, and obligated them to pay him for his labor, even if the goods were destroyed by fire while in his custody. The goods upon which the plaintiff's labor was performed were the property of the defendants, and, when they were delivered to the plaintiff, the defendants stood in the position of pledgors, who left goods with the plaintiff for him to do work upon them. If the goods were destroyed by fire while in the possession of the plaintiff, a question might have arisen as to whether the plaintiff should be paid for the labor which he had performed upon them. We think that the agreement was made with a view to obviate this question, and, to make it clear, that, even in the event of the destruction of the goods by fire, the plaintiff should nevertheless be paid for the labor which up to that time he had performed. The fact that the defendants were authorized under the contract to deduct from the compensation of the plaintiff $1 for every $100 worth of labor which he performed did not affect the essential legal character of the contract existing between the parties. The contract was primarily a contract of hiring. The fact that one of the terms or features of the contract or hiring was analogous to or resembled in some respect a contract of insurance did not change the legal nature of the contract.

An analysis of the contract shows that it lacks an essential element to enable it to be treated as a contract of insurance. There can be no contract of insurance unless there be a risk insured against. As Lord Mansfield said in the early case of Tyrie v. Fletcher, Cowp. 666:

"The underwriter receives a premium for running the risk of indemnifying the insured and whatever cause it be owing to, if he does not run the risk, the consideration for which the premium or money was put into his hands fails, and therefore he ought to return it."

In the contract under consideration the defendants ran no risk. They were obligated to pay the plaintiff for his labor absolutely and unconditionally. If the goods were not destroyed, they were bound to pay the plaintiff, and, if the goods were destroyed, they were required to pay him. While as pledgors of the goods left with the plaintiff they had an insurable interest in the goods, it is not claimed that

the defendants agreed to indemnify any one for the loss of the goods. Indeed, as they were themselves the owners of the goods, there was no one whom they could indemnify against their loss. The defendants' obligation was merely to pay the plaintiff for his labor, and this labor was necessarily to be performed before the goods were destroyed. The defendants' obligation was in no sense contingent. If the goods were not destroyed, they were required to pay the plaintiff for his labor when the goods were returned to them. If the goods could not be returned to them on account of their destruction by fire, they were also to pay the plaintiff for the labor which he had performed upon them up to that time. In either event, the defendants' obligation to pay was absolute. In no event was the obligation of the defendants to pay contingent upon any risk. Any risk which the defendants ran related to the goods and not to their obligation to pay for the labor of the plaintiff. The payment which the defendants agreed to make was not to be made to the person who suffered the loss. The payment was to be made to the person hired for the services which he had rendered.

Contracts which resemble contracts of insurance, but which are legally distinguishable from them, have several times been under consideration by the courts. Where persons applying for incorporation as an insurance company proposed to carry on, among other things, "the inspection and certification as to the sanitary condition of buildings and premises," it was held that such declaration was not entitled to be filed with the superintendent of insurance. The court said:

"This is not insurance in any legal sense, but an entirely distinct kind of business not within the purview of the statute now under consideration." People ex rel. Woodward v. Rosendale, 142 N. Y. 126, 129, 36 N. E. 806, 807.

So, also, an agreement by contractors to indemnify the owners of property for damages to others, resulting from the performance of work on such property, was held not to constitute a contract of insurance. French v. Vix, 2 Misc. Rep. 312, 21 N. Y. Supp. 1016, affirmed 143 N. Y. 90, 37 N. E. 612. In State v. Towle, 80 Me. 287, 14 Atl. 195, the court considered a written agreement between an association and its members, which provided that if a member pays an initiation fee and dues for nine years and until he is married and an assessment on the marriage of any associate, and agrees that he would not get married for two years, the company would pay $1,000 to his wife. The court not only held the contract to be illegal, but held that the contract was not one of insurance. The court said:

"It is not to be conceded, we think, that this contract, in the sense of any modern use of the term, is an insurance policy. No loss or casualty or peril is named for which any indemnity is paid."

In Commonwealth v. Provident Bicycle Ass'n, 178 Pa. 636, 36 Atl. 197, 36 L. R. A. 589, the court was called upon to determine whether a corporation that accumulated a fund by assessment from its members and agreed to clean and repair the bicycles of members, and to replace bicycles destroyed or stolen, was not engaged in the insurance business within the meaning of the insurance law of that state. The court there said:

"The contract contained in the card of membership is peculiar. In some respects it is like, and in other respects unlike, a contract of accident insurance. It is not insurance to agree to clean the bicycle of each member twice during the year; nor is it insurance to agree to provide a bicycle for his use during eight weeks if his own is stolen, unless the stolen property is sooner recovered or replaced.   *   *   *   It (the corporation) is not a beneficial association, but it is protective in its purpose and in the actual character of its business. Its agreement is an understanding not to pay money, but to perform certain services for its members."

As is said in Vance on Insurance (pages 43, 44):

"It is not every contract that wears the appearance of insurance that is really a policy of insurance.   *   *   *   It is to be noticed that in all those cases which are held not to be contracts of insurance there was an element of chance, but no assumption of a risk of actual loss."

The "insurance business" contemplated by section 54 of the insurance law cannot be held to relate to a single contract of employment simply because such contract has in it some element existing in contracts of insurance.

[2] Second. The defense of res adjudicata was not sustained. The defendants offered in evidence a judgment roll, including the pleadings, entered in an action between the same parties. An examination of the pleadings shows that the plaintiff sued the defendants for work, labor, and services performed on their behalf. It does not appear from the judgment roll in evidence that the issues of the previous action were the same as the issues involved in the present action.

It follows that the judgment appealed from should be affirmed, with costs. All concur.